**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Yesenia Sambrano, | No. CV-20-01975-PHX-GMS |
| Plaintiff, | **ORDER** |
| v. | |
| Phillip Moreno, | |
| Defendant. | |

Before the Court is Defendant Philip Moreno's ("Defendant") Motion for Summary Judgment (Doc. 52). Also pending is Defendant's Motion to Exclude Report and Testimony of Ron Hergert (Doc. 53). For the following reasons, the motions are granted in part and denied in part.

## BACKGROUND

This case concerns the search of Plaintiff's vehicle and seizure of her cell phone. Plaintiff Yesenia Sambrano ("Plaintiff") is employed by the Arizona Department of Corrections, Rehabilitation and Reentry as a Correctional Officer II. As part of her duties, she was assigned to provide security at a hospital in Phoenix while an inmate, W.C., was hospitalized in 2020. W.C. was an inmate at ASPC-Lewis, and had been housed in the Rast Unit, at a time when Plaintiff previously worked there.

On September 9, 2020, after W.C. was discharged from the hospital, officers at the hospital discovered a cell phone on a food tray allegedly intended for W.C. Because

1    inmates are not permitted to have cell phones, W.C. was questioned at ASPC-Lewis.

2    During questioning, it was revealed that W.C. already had a cell phone in his possession.

3    When interviewed about how he obtained the phone, W.C. stated that a hospital employee

4    named "Norma" and "COII Sambrano" assisted him in securing the phone.  Defendant

5    Phillip Moreno was then assigned to investigate the case.

6          Upon reviewing the list of correctional officers who worked during W.C.'s hospital

7    stay, Defendant learned that officers Yesenia Sambrano and Mary Zambrano had both

8    worked.  Defendant then questioned W.C. to determine which officer he was referencing.

9    W.C. stated that he did not know the officer's first name, but "it started with a Y" and her

10   last name was spelled "S-A-M-B-R-A-N-O."  W.C. allegedly further explained that Officer

11   Sambrano was in touch with another inmate at a different facility, G.S., and she was aware

12   that W.C. owed G.S. money.  However, in the interview, Defendant showed W.C. photos

13   of Officer Sambrano, to which he responded it was not her and he did not recognize her.

14   (Doc. 57 ¶ 24.)

15         Defendant and his supervisor interviewed Plaintiff on September 15, 2020.  Plaintiff

16   denied any participation or connection to securing cell phones for W.C., even when pressed

17   by the investigators who stated that they had information linking her to the scheme.  She

18   also denied knowing hospital employee Norma Benitez, who confessed to providing W.C.

19   with the cell phone later that day.  Ms. Benitez stated that she could not identify Officer

20   Sambrano as anyone she knew.  Defendant told Plaintiff he intended to seize her phone,

21   which she kept in her car, pursuant to the prison policy.  Defendant alleges that he believes

22   Plaintiff consented to such a search because she had signed a waiver of her Fourth

23   Amendment rights and consent form at the beginning of her employment and was aware

24   that anyone on the grounds was subject to search.  Plaintiff led Defendant and his

25   supervisor to the parking lot and gave Defendant the keys to her vehicle.  Defendant

26   removed the phone from the driver's side door.  After seizing the phone, he believed he

27   needed a warrant to search the phone.  On September 16, 2020, Defendant applied for a

28   search warrant to search the phones of Plaintiff and Ms. Benitez.  He submitted two

1    affidavits simultaneously, one for each suspect.  Defendant alleges that he included all of
2    the relevant information to the investigation in the affidavits supporting the warrant
3    requests.

4          Plaintiff asserts that Defendant misrepresented several aspects of the investigation
5    in the affidavit, including Ms. Benitez's confession, the failed identification, and W.C.'s
6    credibility.  The magistrate issued the search warrant on September 16, 2020.  Defendant
7    then contacted another investigator to arrange for downloading data from the phones, but
8    the investigator was unable to access any data on Plaintiff's phone because of the security
9    settings.  Defendant asked Plaintiff for the PIN to unlock her phone, but she refused.  On
10   September 28, 2020, Defendant returned Plaintiff's phone to her, having been unable to
11   access any of the data.  The parties agree that the phone was returned undamaged and in
12   good working condition.

13         On October 10, 2020, Plaintiff filed her complaint in this action, alleging that the
14   warrantless search and seizure violated her Fourth and Fourteenth Amendment rights.
15   Defendant alleges that Plaintiff had no reasonable expectation of privacy in her vehicle,
16   consented to the search, or that the automobile exception to the warrant requirement
17   applies.  Additionally, Plaintiff amended her complaint on December 3, 2021, adding a §
18   1983 Judicial Deception claim and alleging that Defendant made deliberately false
19   statements or recklessly disregarded the truth in his affidavit supporting the search warrant.
20   Thereafter, Defendant filed the instant summary judgment motion as well as a motion to
21   exclude Plaintiff's expert witness, Ron Hergert.

**DISCUSSION**

23   **I.    Legal Standard**

24         Defendant moves for summary judgment on all of Plaintiff's claims.  "The purpose
25   of summary judgment is "to isolate and dispose of factually unsupported claims." *Celotex*
26   *Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986).  Summary judgment is appropriate if the
27   evidence, viewed in the light most favorable to the nonmoving party, shows "that there is
28   no genuine issue as to any material fact and that the movant is entitled to judgment as a

1  matter of law." Fed. R. Civ. P. 56(a). Only disputes over facts that might affect the

2  outcome of the suit will preclude the entry of summary judgment, and the disputed

3  evidence must be "such that a reasonable jury could return a verdict for the nonmoving

4  party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

5        "[A] party seeking summary judgment always bears the initial responsibility of

6  informing the district court of the basis for its motion and identifying those portions of [the

7  record] which it believes demonstrate the absence of a genuine issue of material fact."

8  *Celotex*, 477 U.S. at 323. "Where the non-moving party bears the burden of proof at trial,

9  the moving party need only prove that there is an absence of evidence to support the non-

10  moving party's case." *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010).

11  "Where the moving party meets that burden, the burden then shifts to the non-moving party

12  to designate specific facts demonstrating the existence of genuine issues for trial." *Id.* As

13  the Ninth Circuit has said, "[t]his burden is not a light one." *Id.* To meet this burden, the

14  "non-moving party must come forth with evidence from which a jury could reasonably

15  render a verdict in the non-moving party's favor." *Id.* Additionally, parties opposing

16  summary judgment are required to "cit[e] to particular parts of materials in the record"

17  establishing a genuine dispute or "show[] that the materials cited do not establish the

18  absence . . . of a genuine dispute." Fed. R. Civ. P. 56(c)(1). A district court has no

19  independent duty "to scour the record in search of a genuine issue of triable fact." *Keenan*

20  *v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996).

21  **II.    Analysis**

22         **A. Search and Seizure**

23        "In § 1983 actions, qualified immunity protects government officials from liability

24  for civil damages insofar as their conduct does not violate clearly established statutory or

25  constitutional rights of which a reasonable person would have known." *Sampson v. County*

26  *of Los Angeles*, 974 F.3d 1012, 1018 (9th Cir. 2020) (quoting *Pearson v. Callahan*, 555

27  U.S. 223, 231 (2009) (internal quotations omitted)). Therefore, to overcome qualified

28  immunity Plaintiff must show that Defendant (1) "violated a federal statutory or

1    constitutional right" and (2) "the unlawfulness of [his] conduct was clearly established at

2    the time." *District of Columbia v. Wesby*, 138 S. Ct. 577, 589 (2018).  A clearly established

3    right exists when "every reasonable official would [have understood] that what he is doing

4    violates that right." *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011).  Such a right can be

5    demonstrated in one of two ways: (1) a government actor is on notice when existing

6    precedent has "placed the statutory or constitutional question beyond debate," or (2) if "a

7    violation [is] so obvious that it puts every reasonable government actor on notice that the

8    conduct violates the law." *al-Kidd*, 563 U.S. at 741; *Lamorie v. Davis*, 485 F. Supp. 3d

9    1065, 1069 (D. Ariz. 2020).  Courts are permitted to "exercise their sound discretion in

10   deciding which of the two prongs of the qualified immunity analysis should be addressed

11   first." *Pearson*, 555 U.S. at 236.

### 1.  Violation of Fourth Amendment

13       The Court analyzes only the second prong of qualified immunity because here, even

14   if Defendant violated Plaintiff's Fourth Amendment rights, Plaintiff does not show a

15   violation of a clearly established right, as required to overcome qualified immunity.

16       A governmental official only "violates clearly established law when, at the time of

17   the challenged conduct, [t]he contours of [a] right [are] sufficiently clear that every

18   reasonable official would [have understood] that what he is doing violates that right." *al-

19   Kidd*, 563 U.S. at 742.  "Although the Supreme Court does not require a [precedential] case

20   directly on point for a right to be clearly established, existing precedent must have placed

21   the statutory or constitutional question beyond debate." *Evans v. Skolnik*, 997 F.3d 1060,

22   1066 (9th Cir. 2021) (internal quotations omitted) (quoting *Kisela v. Hughes*, 138 S. Ct.

23   1148, 1152 (2018)).  Additionally, "[t]he Supreme Court has also warned . . . not to find

24   clearly established law lurking in the broad history and purposes of the Fourth Amendment

25   or in broad historical assertions." *Id.* (cleaned up) (quoting *al-Kidd*, 563 U.S. at 742).  In

26   fact, the "Supreme Court has repeatedly told courts . . . not to define clearly established

27   law at a high level of generality." *Id.* (internal quotations omitted).

28       Plaintiff unsuccessfully advances two reasons why Defendant violated a clearly

- 5 -

1    established right.  The first is that "[t]he need for a warrant based upon probable case has

2    been known since the adoption of the 4th amendment." (Doc. 56 at 8.)  While it is certainly

3    true that a warrant is a historical requirement under the Fourth Amendment, to find that

4    this alone creates a clearly established right runs counter to the admonition "not to define

5    clearly established law at a high level of generality." *Evans*, 997 F.3d at 1066.  Moreover,

6    Defendant does not dispute that a warrant is typically required to conduct a search; instead,

7    he argues that longstanding and specifically delineated exceptions to the warrant

8    requirement apply to the search in this case.

9            Second, Plaintiff unsuccessfully uses two Ninth Circuit cases to illustrate that the

10   right to be free of Defendant's search and seizure was clearly established.  *See United*

11   *States v. Gonzalez*, 300 F.3d 1048 (9th Cir. 2002); *United States v. Bunkers*, 521 F.2d 1217

12   (9th Cir. 1975).  Both of those cases, however, address when an employee has a diminished

13   expectation of privacy through the notice of, or a waiver to, an employer.  In *Gonzalez*, the

14   Court considered whether a store policy on a military base that permitted randomized

15   searches of employees' bags to deter theft violated the Fourth Amendment.  The Ninth

16   Circuit surveyed several precedential cases addressing randomized searches by the

17   government in schools or workplaces.  The Court ultimately determined that "Mr.

18   Gonzalez's expectation of privacy was limited by his knowledge of the store policy of

19   searching employees' belongings to deter and apprehend theft."  *Gonzalez*, 300 F.3d at

20   1054.  The Court followed the framework set out in *New Jersey v. T.L.O.*  469 U.S. 325

21   (1985).  It asked: (1) whether the search was justified at its inception, and (2) whether the

22   search, as actually conducted, was reasonably related in scope to the circumstances which

23   justified the interference.  *Gonzalez*, 300 F.3d at 1054.  It found that the prevention of theft

24   is a legitimate justification for a search and there was no evidence that the search went

25   beyond the scope of its justification.  *Id.*  Thus, because "no probable cause is needed for

26   such an employee search, but reasonableness is required," there was no Fourth Amendment

27   violation.  *Id.* at 1055.

28           The second case, *United States v. Bunkers*, concerned the warrantless search of a

1   U.S. postal worker's locker for stolen packages.  521 F.2d at 1220.  The Court held that

2   Bunkers' "private interest in the locker is at most a very restricted and regulated

3   employment related use thereof" because "[t]he inspectors held the continuing regulatory

4   leave and unrestricted right to inspect and search the locker at any time 'where there is

5   reasonable cause to suspect criminal activity.'"  *Id.*  Thus, the search of the employee's

6   locker and subsequent seizure of stolen parcels was reasonable and lawful.

7           These cases do not "place[] the statutory or constitutional question beyond debate,"

8   as Plaintiff is required to show.  *al-Kidd*, 563 U.S. at 741.  Plaintiff asserts that these cases

9   would have put Defendant on notice that his actions were unconstitutional, but to the extent

10  these cases are on point, they more likely do the opposite.  As to *Gonzalez*, the Court held

11  that such a search was lawful under the Fourth Amendment, meaning that to whatever

12  extent this case is on point, it does not put reasonable officers on notice as to what is

13  unlawful under the Fourth Amendment.  And, while *Bunkers* may be more on point, it

14  would suggest to a reasonable officer that Defendant's conduct was lawful.  In that case,

15  the Court determined that Bunkers had no reasonable expectation of privacy in the use of

16  his "government supplied employment connected locker" because he was on notice it could

17  be searched, and the search was conducted pursuant to a "well-founded suspicion that

18  criminal activity was afoot."  *Bunkers*, 521 F.2d at 1220.

19          As in *Bunkers*, Officer Sambrano had, at minimum, notice that investigators could

20  search her vehicle if they believed it contained evidence.  (Doc. 51 ¶ 2; Doc. 57 ¶ 2.)

21  Additionally, even if the officers did not have probable cause, they likely had reasonable

22  suspicion that Officer Sambrano was involved in criminal activity, based on W.C.'s

23  description of the events.  To be sure, there are differences between this case and *Bunkers*.

24  Most importantly, Defendant searched Plaintiff's vehicle, rather than a "government

25  supplied[,] employment connected" space.  *Bunkers*, 521 F.2d at 1220.  This fact may make

26  the case less like *Bunkers*, but it does not mean that *Bunkers* informed officers that their

27  conduct was unlawful.  At the very least, the case demonstrates that the contours of when

28  an employee's property may be searched at her workplace without a warrant due to a

1    diminished expectation of privacy are not clearly defined.

2         Although Plaintiff does not cite any other precedential cases, other cases exist

3    explaining the differing requirements for workplace searches related to investigation of

4    criminal activity, investigation for work-related purposes, or both.   For example, in

5    *O'Connor v. Ortega*, the Supreme Court addressed a warrantless search of a physician's

6    office to search for evidence of his improper acquisition of a computer and sexual

7    harassment of two hospital employees.   480 U.S. 709, 712 (1987).   Hospital officials

8    conducted the search.   The Supreme Court rejected the argument that public employees

9    can never have a reasonable expectation of privacy in their place of work and opted for a

10   more particularized approach.   It said, "[t]he legitimate privacy interests of public

11   employees in the private objects they bring to the workplace may be substantial.   Against

12   these privacy interests, however, must be balanced the realities of the workplace, which

13   strongly suggest that a warrant requirement would be unworkable." *Id.*   It further explained

14   that "[w]hile police, and even administrative enforcement personnel, conduct searches for

15   the primary purpose of obtaining evidence for use in criminal or other enforcement

16   proceedings, employers most frequently need to enter the offices and desks of their

17   employees for legitimate work-related reasons wholly unrelated to illegal conduct." *Id.*   At

18   least one circuit court has held that a less stringent standard applies if "the dominant

19   purpose[] of the warrantless search . . . was to acquire evidence of criminal activity," so

20   long as the search is also "work-related." *United States v. Simons*, 206 F.3d 392, 400 (4th

21   Cir. 2000).   In this case, it is unclear whether the search was pursuant to a workplace

22   incident, in furtherance of criminal penalties, or both.[1]

23        In any event, the issues presented are not clearly established for the purposes of

24   qualified immunity.   Namely, to what extent, if any, can an employee's expectation of

25   privacy in her vehicle on government property be reduced through legitimate regulation?

26   *See O'Connor*, 480 U.S. at 717 (plurality opinion).   An employee likely has a stronger

27

28
---
[1] The parties offer varying reasons for the search. Defendant notes that "[p]romoting prison contraband is a criminal offense as well as a form of employee misconduct." (Doc. 52 at 2 n.1.)

1    expectation of privacy in her vehicle than in her office, her work-issued computer, or work-

2    issued locker.  However, when combined with the fact that Plaintiff signed a consent form

3    indicating an understanding that her car could be searched for evidence, and the widely

4    recognized diminished expectation of privacy in vehicles, the Court cannot say that, if the

5    search was unlawful, every reasonable officer would understand it to be so.  *United States*

6    *v. Martinez-Fuerte*, 428 U.S. 543, 561 (1976) ("[O]ne's expectation of privacy in an

7    automobile . . . [is] significantly different from the traditional expectation of privacy and

8    freedom in one's home.").

9            Additionally, Plaintiff's blanket contention that the need for a warrant based on

10   probable cause has been known since the adoption of the Fourth Amendment sidesteps the

11   inquiry entirely—it is equally well known that a search based on consent or the automobile

12   exception do not require a warrant.  And Plaintiff does not offer any cases to demonstrate

13   that if Defendant conducted the search pursuant to her consent or the automobile exception

14   that he violated a clearly established right.  Thus, because the only cases provided by

15   Plaintiff do not address the facts at issue here; namely, the search of an automobile,

16   presumed consent, or a search for a workplace-related incident at a prison, Defendant did

17   not violate a clearly established right.  As such, he is entitled to qualified immunity on the

18   Fourth Amendment claim.

19           **B.  Judicial Deception**

20           Plaintiff's judicial deception claim survives summary judgment because Plaintiff

21   has made the requisite showing that there are genuine disputes of material fact about

22   whether Defendant made representations that were deliberately false or recklessly

23   disregarded the truth. On summary judgment for a judicial deception claim, "the plaintiff

24   must make a 'substantial showing' of deliberate falsehood or reckless disregard for truth,

25   and establish that but for the dishonesty, the challenged action would not have occurred."

26   *Liston v. County of Riverside*, 120 F.3d 965, 973 (9th Cir. 1997).

27           Plaintiff identifies approximately seven statements that Defendant either omitted or

28   stated falsely in his affidavit: (1) Benitez's confession to purchasing the phone; (2)

1   Benitez's confession to purchasing W.C. tobacco; (3) Benitez's statement that she did not

2   recognize Officer Sambrano; (4) Benitez's statement that no corrections officers were

3   involved in her obtaining the phones and delivering them to W.C.; (5) W.C.'s statement

4   that he had Sambrano's telephone number, when the number he provided officers did not

5   belong to Sambrano; (6) W.C.'s failure to identify Sambrano in a photograph on two

6   occasions; and (7) Defendant's statement that W.C. had proven to be credible.

7          As to Ms. Benitez's confession, Plaintiff does not make a substantial showing of

8   deliberate falsehood or reckless disregard for truth.  The search warrant requests for Ms.

9   Benitez's and Plaintiff's phones were sent to the magistrate at the same time.  The requests

10   were consecutively numbered such that they were sent as a singular package.  The same

11   magistrate signed both search warrants on the same day.  Thus, it is not clear that Defendant

12   omitted any information about Ms. Benitez's confession because the magistrate, upon

13   reading the entire package, would have been informed that she confessed to delivering the

14   phones.

15          Yet both the quantity and the nature of the remaining undisclosed statements present

16   a genuine dispute of material fact about whether they were omitted with reckless disregard

17   for the truth and whether they were material.  The Ninth Circuit is clear that "the

18   government need not include all of the information in its possession to obtain a search

19   warrant."  *Ewing v. City of Stockton*, 588 F.3d 1218, 1226 (9th Cir. 2009).  However, at

20   the time of the affidavit, the only information forming the probable cause determination as

21   to Sambrano was information that W.C. provided.  Thus, while Defendant was not required

22   to include all information in his possession, the fact that W.C.'s statements were the only

23   link between Plaintiff and the alleged criminal activity indicates that the Defendant should

24   have taken care to include facts relevant to the accuracy of the identification.  Because the

25   affidavit includes several statements from the interview where W.C. implicates Plaintiff

26   but does not address W.C.'s failure to recognize Plaintiff in a photo, the omission could

27   have been deliberate.  Similarly, because Defendant stated in the affidavit that Ms. Benitez

28   and Officer Sambrano were both involved in the scheme, Ms. Benitez's statements that she

1    did not know Officer Sambrano and the fact that she had previously provided W.C.

2    contraband, could have been deliberately omitted.  At the very least, a reasonable jury could

3    determine that omission of these statements was reckless in light of the significant reliance

4    on W.C.'s statements.

5          Additionally, W.C.'s erroneous statement about Plaintiff's phone number and

6    failure to identify her in a photo could have been material to the probable cause

7    determination.  As noted above, W.C.'s identification and explanation were the primary, if

8    not only, basis for probable cause.  While W.C. provided certain statements identifying

9    Plaintiff (such as her last name and that her first name begins with a "Y"), he also provided

10   an incorrect phone number that he claimed belonged to Officer Sambrano.  In the affidavit,

11   however, Defendant implied that the identification was unequivocal.  (Doc. 51-8 at 13)

12   ("Furthermore, W.C. alleged that a uniformed correctional officer who was later identified

13   as Yesenia Sambrano . . . facilitated W.C. being provided a cellular phone.").  Because the

14   magistrate must have relied heavily on W.C.'s identification as the primary factor creating

15   probable cause, knowledge that certain aspects of his identification were flawed, including

16   failure to identify her in a photo and providing an incorrect phone number could have

17   undermined the probable cause determination.

18         Similarly, there is a genuine dispute of material fact about whether Defendant's

19   statement that W.C. had proven credible was deliberately false or made with reckless

20   disregard for truth.  Although W.C. implicated Ms. Benitez in the scheme, who ultimately

21   confessed to participating, that was the only evidence Defendant possessed as to W.C.'s

22   credibility.  Defendant also did not include any of W.C.'s criminal history.  *United States*

23   *v. Meling*, 47 F.3d 1546, 1555 (9th Cir. 1995) (explaining that when other information

24   supports a finding of probable cause, an informant's low credibility is inconsequential).

25   Here, because no other information supported a finding of probable cause, W.C.'s

26   credibility is consequential.  Plaintiff has established that there are sufficient facts cutting

27   against W.C.'s reliability such that there is a genuine dispute of material fact as to whether

28   the credibility statement was deliberately false or recklessly disregarded the truth.  Thus, if

1    a jury found that Defendant's statements about W.C.'s credibility were false, the falsity

2    likely materially affected whether probable cause existed.

3        Additionally, the fact that the officers were ultimately unable to search Plaintiff's

4    phone is not dispositive of the claim.  Plaintiff does not dispute the fact that a search did

5    not occur.  Instead, she alleges that the search warrant authorized Defendant to retain the

6    phone for an extended period of time.  This appears to be true because, after obtaining the

7    search warrant, Defendant retained the phone for approximately twelve more days as he

8    attempted to access its data.  (Doc. 51 ¶¶ 62-66.)  The elements of the judicial deception

9    claim, as set out by the Ninth Circuit are: 1) deliberate falsehood or reckless disregard for

10   truth, and 2) "but for the dishonesty, the *challenged action* would not have occurred."[2]

11   *Liston*, 120 F.3d at 973 (emphasis added).  Here, the challenged action is the retention of

12   the phone after the initial seizure, in reliance on an allegedly faulty search warrant.  Plaintiff

13   has sufficiently alleged that if the search warrant did not issue, Defendant would not have

14   retained the phone for that time period.  Defendant also appears to concede as much, stating

15   "Moreno informed Officer Sambrano that he was going to seek a warrant to search her

16   phone and if a judge would not sign off on the search warrant, the phone would be returned

17   to Officer Sambrano."  (Doc. 51 at 6.)  Thus, because Plaintiff is challenging the seizure

18   and retention of her phone and Defendant does not appear to challenge that he would have

19   returned the phone if the search warrant did not issue, Plaintiff makes the requisite showing

20   on summary judgment.

21       Lastly, Defendant is not entitled to qualified immunity on the judicial deception

22   claim.  The Ninth Circuit has "consistently applied the rule that summary judgment on the

23   ground of qualified immunity is not appropriate once plaintiff has made a judicial deception

24   claim."  *Chism v. Washington State*, 661 F.3d 380, 393 (9th Cir. 2011).  This is because

---

[2] Defendant attempts to argue that the requirement is narrower; he asserts the standard should be "but for the dishonesty, the *search* would not have occurred."  (Doc. 52 at 13.) For this proposition, he quotes *Chism*.  661 F.3d 380 (9th Cir. 2011).  It is clear, however, that the quote in *Chism* modifies an earlier standard for the specific facts of that case—a case in which a search did occur.  *Chism* does not hold that a Plaintiff cannot bring a judicial deception claim if officers rely on a warrant to retain a person's property for an unreasonable period of time, but do not actually conduct the search.

1    "[i]n judicial deception cases, our qualified immunity at the summary judgment stage is

2    swallowed by the question of reckless or intentional disregard for the truth. . . . . [T]his

3    merger is sensible because no reasonable officer could believe that it is constitutional to

4    act dishonestly or recklessly with regard to the basis for probable cause in seeking a

5    warrant." *Id.* at 393 n.15.  In light of such clear precedent, the fact that Plaintiff's phone

6    was only seized and retained pursuant to the search warrant, but not actually searched, does

7    not establish grounds for qualified immunity.

8            As such, the motion for summary judgment on the judicial deception claim is

9    denied.

10       **III.    Motion to Exclude**

11           Defendant's Motion to Exclude Report and Testimony of Ron Hergert is granted in

12   part and denied in part, however, several aspects of the report and testimony are likely to

13   be inadmissible at trial. Pursuant to Federal Rule of Evidence 702,

14                    A witness who is qualified as an expert by knowledge, skill,
                     experience, training, or education may testify in the form of an
15                    opinion or otherwise if:

16                    (a) the expert's scientific, technical, or other specialized
                     knowledge will help the trier of fact to understand the evidence
17                    or to determine a fact in issue;

18                    (b) the testimony is based on sufficient facts or data;

19                    (c) the testimony is the product of reliable principles and
                     methods; and
20
                     (d) the expert has reliably applied the principles and methods
21                    to the facts of the case.

22           The Court acts as a gatekeeper to ensure the proffered testimony is both relevant

23   and reliable. *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 595 (1993).  Expert

24   opinion testimony is reliable "if the knowledge underlying it has a reliable basis in the

25   knowledge and experience of the relevant discipline." *Primiano*, 598 F.3d at 565.  When

26   making this determination, the Court should consider (1) whether the theory can be and

27   has been tested, (2) whether the theory has been peer reviewed and published, (3) what the

28   theory's known or potential error rate is, and (4) whether the theory enjoys general

1  acceptance in the applicable scientific community.  *Daubert*, 43 F.3d at 1317; *Murray v.*

2  *S. Route Mar. SA*, 870 F.3d 915, 922 (9th Cir. 2017).  However, these factors are not

3  exhaustive, nor are they "equally applicable (or applicable at all) in every case." *Daubert*,

4  43 F.3d at 1317.  "Applicability 'depend[s] on the nature of the issue, the expert's particular

5  expertise, and the subject of his testimony.'"  *Murray*, 870 F.3d at 922 (quoting *Kumho*

6  *Tire Co. v. Carmichael*, 526 U.S. 137, 150 (1999)).

7          Expert opinion must be "relevant to the task at hand" and "logically advance[] a

8  material aspect of the proposing party's case."  *Daubert*, 43 F.3d at 1315.  "Therefore, a

9  federal judge should exclude scientific expert testimony under the second prong of the

10  *Daubert* standard unless he is 'convinced that it speaks clearly and directly to an issue in

11  dispute in the case.'"  *Jones v. United States*, 933 F. Supp. 894, 900 (N.D. Cal. 1996), *aff'd*,

12  127 F.3d 1154 (9th Cir. 1997).  The Court is afforded broad discretion when acting in its

13  gatekeeper role.  *United States v. Hankey*, 203 F.3d 1160, 1168 (9th Cir. 2000); *Kumho*

14  *Tire*, 526 U.S. at 150–53.  However, "Rule 702 should be applied with a 'liberal thrust'

15  favoring admission."  *Messick v. Novartis Pharm. Corp.*, 747 F.3d 1193, 1196 (9th Cir.

16  2014) (quoting *Daubert*, 509 U.S. at 588).  "Shaky but admissible evidence is to be attacked

17  by cross examination, contrary evidence, and attention to the burden of proof, not

18  exclusion." *Primiano v. Cook*, 598 F.3d 558, 564 (9th Cir. 2010).

19          The "test of reliability is flexible, and *Daubert*'s list of specific factors neither

20  necessarily nor exclusively applies to all experts or in every case." *Kumho Tire*, 526 U.S.

21  at 150.  In some cases, "the relevant reliability concerns may focus upon personal

22  knowledge or experience."  *Id.*  However, an expert's testimony must not include

23  "unsubstantiated speculation [or] subjective beliefs." *Cooper v. Brown*, 510 F.3d 870, 942

24  (9th Cir. 2007).

25          Here, the witness has significant experience in the fields of policing and misconduct

26  investigations.  His experience indicates that he is qualified to testify on general objective

27  policing and investigation standards, as well as how to determine if police misconduct has

28  occurred.  He thus would be qualified to testify as to standards or practices required in

1    setting forth facts, and what facts should be presented, in requesting a search warrant, so

2    that a court might evaluate the credibility of a witness's story.

3        Nevertheless, to the extent Mr. Hergert arrives at legal conclusions, such

4    conclusions are inadmissible and irrelevant. *Nationwide Transport Fin. v. Cass Info. Sys.,*

5    *Inc.,* 523 F.3d 1051, 1058 (9th Cir. 2008) ("[A]n expert witness cannot give an opinion as

6    to her legal conclusion, i.e., an ultimate issue of law."). Mr. Hergert offers several legal

7    conclusions about whether probable cause existed, whether the seizure was improper, or

8    whether Defendant violated Plaintiff's constitutional rights. These opinions are necessarily

9    excluded so as not to invade the "distinct and exclusive province of the court." *Id.*

10       Further, some of his conclusions about Defendant's demeanor and methodology in

11   interviewing witnesses are at best marginally relevant and will likely run afoul of Federal

12   Rule of Evidence 403. To the extent Mr. Hergert opines about which witness testimony

13   Defendant should have believed and should not have believed, he does not appear to have

14   provided in his report an adequate basis of expertise on which the Court would allow him

15   to testify to such conclusions. For example, in Observation 4, Mr. Hergert explains his

16   "general impression" of Defendant during questioning, and states that "[t]he story W.C.

17   presented makes no logical sense." (Doc. 53-2 at 7.) He does not provide any objective

18   standard by which he assesses the interview and arrives at his apparent assessment that

19   Defendant should not have believed W.C.. In Observation 8, the expert reviews

20   Defendant's demeanor in his interview with Plaintiff, concluding "I believe he treated her

21   in an unprofessional and disrespectful manner." (Doc. 53-2 at 13.) Observations 11 and

22   12 also contain such subjective opinions. These opinions, specifically his opinions about

23   Defendant's demeanor and methodology in interviewing witnesses, are not the product of

24   reliable methods or explained experience. At least at this point, such observations also do

25   not seem to relate sufficiently to the only remaining claim at issue—whether Defendant

26   knowingly or recklessly omitted necessary information from the search warrant

27   affidavits—they thus will likely be excluded at trial.

28       However, again by way of example, and without any effort to completely parse what

would and would not be admissible at trial, Observation 6, some of Observation 8, and Observations 10, 13, and 14 are not excluded at this time because they contain opinions that are sufficiently reliable, relevant, and helpful to the jury.  These observations primarily concern Defendant's potential investigative bias against Plaintiff.  Although Mr. Hergert does not expressly reference objective investigation standards, he points to specific actions or statements that Defendant makes and explains why they may suggest an investigative bias.  Based on his qualifications and experience, the observations are sufficiently reliable.  Further, they are relevant to the remaining judicial deception claim.  The observations and analysis can help the jury assess whether Defendant's statements in the affidavit were deliberately false or recklessly disregarded the truth because they explain why he may have improperly omitted information regarding W.C.'s identification of Plaintiff.  They further help the jury understand whether it was truthful for Defendant to represent W.C. as credible in the affidavit.  Thus, these observations are not excluded.

## CONCLUSION

Accordingly,

**IT IS THEREFORE ORDERED** that Defendant's Motion for Summary Judgment (Doc. 52) is **GRANTED** in part and **DENIED** in part.  It is granted as to the Fourth and Fourteenth Amendment Claim (Count I).  It is denied as to the Judicial Deception Claim (Count II).

**IT IS FURTHER OREDERED** that Defendant's Motion to Exclude Report and Testimony of Ron Hergert (Doc. 53) is **GRANTED** in part and **DENIED** in part.  It is granted as to the purely legal conclusions.  It is denied without prejudice as to the remaining opinions.

Dated this 23rd day of March, 2023.

_____
G. Murray Snow
Chief United States District Judge

- 16 -